IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARITY LABORATORIES LLC, | ) ) ) ) |
| *Plaintiff*, | ) No. 22 C 2193 |
| v. | ) ) Judge Virginia M. Kendall |
| MORRIS SNF MANAGEMENT, LLC, | ) ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

This dispute harkens back to April 2020, the very early days of the COVID-19 pandemic. At that time, Plaintiff Clarity Laboratories LLC and Defendant Morris SNF Management, LLC entered into a contract regarding COVID-19 testing at a skilled nursing facility. Two years later, on April 27, 2022, Clarity brought a two-count suit against Morris SNF for breach of contract and in the alternative, quantum meruit, seeking $99,750 for testing it provided to Morris SNF's employees. (Dkt. 1). On October 27, 2023, Morris SNF moved for summary judgment on both counts. (Dkt. 54). For the following reasons, Morris SNF's motion for summary judgment [54] is granted.

**BACKGROUND**

Defendant Morris SNF Management, LLC formerly operated a skilled nursing facility called Regency Care of Morris, located in Morris, Illinois. (Dkt. 59 ¶ 2; Dkt. 60 ¶ 2). Plaintiff Clarity Laboratories LLC has its principal place of business in New Jersey and provides molecular lab services. (Dkt. 1; Dkt. 56-5 at 2).

On April 24, 2020, Clarity and Morris SNF entered into the Laboratory Services Agreement ("LSA"). (Dkt. 56-4). The LSA stated that the "LAB" (Clarity) would provide Real

1

Time Polymerase Chain Reaction ("RT-PCR") testing for COVID-19 to "CLIENT" (Morris SNF). (Dkt. 59 ¶¶ 6–8; Dkt. 56-4 § 2). With respect to "billing and payment," the LSA provided that "[Clarity] will not bill [Morris SNF] for molecular lab services; however, [Clarity] reserves the right to bill those patients directly for services not covered by insurance." (Dkt. 56-4 § 8(a)). To facilitate the payment process, the LSA further outlines:

> [Morris SNF] agrees to provide [Clarity] with any and all billing information they have on patient's [sic] being tested. For those PATIENTS without insurance, [Clarity] will create an invoice for each patient (see Exhibit A) and send that invoice to **Morris SNF Management, LLC**.

(*Id.*) (emphasis in original). In turn, Exhibit A states that:

- SARS-Cov-2 COVID 19 testing:
    - Lab will bill insurance for patients being tested
    - Employee testing rate to the facility- $75
- Respiratory Pathogen Panel Testing
    - Lab will bill insurance for patients being tested
    - Employee testing rate to the facility- $299

(Dkt. 56-4 at 7). The LSA does not define "patients." (*See* Dkt. 56-4 at § 8(a), 7). Clarity drafted the LSA. (Dkt. 59 ¶ 19). Both parties agree that the LSA is "valid and enforceable" and "expresses the entire agreement between the parties." (Dkt. 59 ¶¶ 5 17; Dkt. 56-4, § 14(d)).

WW Healthcare Consultants, LLC provided services to Morris SNF, including handling their accounts payable. (Dkt. 66 ¶¶ 1, 3). On January 15, 2021, Janet Holland, an accountant with WW Healthcare, emailed Dolly Sadikot, a billing employee of Clarity, and asked for a W-9 "so [she] could get [Clarity] entered as a vendor." (Dkt. 60-2 at 4). A few months later, Holland then emailed Sadikot and requested copies of "any invoices for 2020 . . . so we can count those expenses when reporting to the states on our COVID related expenses." (Dkt. 60-2 at 5). Clarity proceeded to submit $99,750 in invoices for testing it conducted upon Morris SNF's employees that it realized was unpaid. (Dkt. 66 ¶ 11; Dkt. 60-2 at 9; Dkt. 66-1). Morris SNF did not pay the

invoices and asserted they had no obligation under the LSA to pay Clarity for *any* molecular lab testing. Among other relief, Clarity seeks $99,750 in unpaid testing services performed only on Morris SNF's employees. (Dkt. 1 at 4–5; Dkt. 63 at 2). Morris SNF now seeks summary judgment on both counts, arguing that the clear language of the contract bars Clarity's claim. (Dkt. 54).

## LEGAL STANDARD

Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). The Court's role is not to evaluate the weight of the evidence, to judge the credibility of the witness, or to determine the ultimate truth of the case, but simply to determine whether there exists a genuine issue of material fact. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). A genuine issue of material fact exists when there is "sufficient evidence" for a jury to return a verdict in favor of the party opposing summary judgment. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022).

## DISCUSSION

### I.  Breach of Contract

As the Court sits in diversity, the choice-of-law rule of the forum state, Illinois, applies. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184 (7th Cir. 1996). In Illinois, a court will apply a contract's choice-of-law provision to disputes arising from that contract. *Id.* at 1185. Here, the LSA provides that New Jersey law applies to the contract's interpretation. (Dkt. 59 ¶ 16; Dkt. 56-4 § 14(c)). To establish breach of contract, the plaintiff must show (1) the parties entered into a

3

valid contract, (2) the plaintiff performed its contractual obligations, (3) the defendant did not perform its obligations, and (4) the defendant's breach caused the plaintiff to incur damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

Morris SNF argues they did not breach the LSA by refusing to pay for their employees' COVID-19 testing, as the LSA expressly stated that Clarity would not bill Morris SNF for molecular lab services. For their part, Clarity acknowledges the LSA states as much, but disputes that it agreed it would not bill Morris SNF for their employees' molecular lab services since Exhibit A to the LSA states that Morris SNF must pay for employee testing.

"As a general rule, courts should enforce contracts as the parties intended . . . [by] discern[ing] and implement[ing] the common intention of the parties." *Jordonne v. Saint Louis*, 2024 WL 3421888, at *3 (N.J. Super. Ct. App. Div. July 16, 2024) (citing *Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007)). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" *Id.* Moreover, the court gives the language its "plain, ordinary meaning." *Rider Ins. Co. v. Mid-Century Ins. Co.*, 2017 WL 4076106, at *3 (D.N.J. Sept. 14, 2017) (quoting *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001)). When "the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'" *Cypress Point Condo, Ass'n, Inc. v. Adria Towers, LLC*, 143 A.3d 273, 280 (N.J. 2016) (citation omitted); *EQR-LPC Urb. Renewal N. Pier, LLC v. City of Jersey City*, 173 A.3d 243, 249 (App. Div. 2016), *aff'd*, 173 A.3d 184 (N.J. 2017) ("So long as that intent is evident from the contract's clear, unambiguous terms, the agreement will be enforced as written."). It is not the

4

role of the court to make a better contract for either of the parties. *Cypress Point Condo, Ass'n*, 143 A.3d at 280.

Moreover, contract interpretation is a legal matter suitable for resolution on summary judgment. *EQR-LPC Urb. Renewal N. Pier*, 173 A.3d at 249. Similarly, whether contract terms are ambiguous is a pure question of law. *IBEW Loc. Union No. 102 v. Star-Lo Elec., Inc.*, 444 F. App'x 603, 607 (3d Cir. 2011). To the extent any ambiguity exists, that is, to the extent that a contractual term is susceptible to more than one reasonable interpretation, *Powell v. Alemaz, Inc.*, 760 A.2d 1141 (N.J. Super. Ct. App. Div. 2000), the court will look to the contract language, the meaning suggested by counsel, and extrinsic evidence offered in support, *see e.g.*, *Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). But "a contract is not ambiguous just because the parties do not agree on the proper construction." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)).

Here, the only fact in dispute is whether the parties agreed that Morris SNF would pay Clarity for their employees' testing. Analyzing the plain language of the contract, both parties agree that § 8(a) of the LSA states that "[Clarity] will not bill [Morris SNF] for molecular lab services." (Dkt. 56-4 at 3, § 8(a)). Clarity then "reserves the right to bill patients directly for services not covered by insurance" and notes that "[f]or those PATIENTS without insurance, [Clarity] will create an invoice for each patient (See Exhibit A) and send that invoice to Morris SNF Management." (*Id.*)

The Court finds this language unambiguous and dispositive to the dispute of whether Morris SNF is in breach for non-payment to Clarity for employee testing. The written words of the LSA express the parties' intent: Clarity will not bill Morris SNF for molecular lab services.

5

*EQR-LPC Urban Renewal N. Pier*, 173 A.3d at 249. There is no other reasonable construction of § 8(a) that would create an obligation by Morris SNF to pay Clarity. *See Patel v. Brightstar Hosp., LLC*, 2022 WL 2296985, at *2 (N.J. Super. Ct. App. Div. June 27, 2022) ("When presented with an unambiguous contract, the court, therefore, should not look outside the 'four corner' of the contract to determine the parties' intent." (citation omitted)).

Even so, Clarity argues that § 8(a) of the LSA, by its terms, only applies to "patients," not employees of Morris SNF. Yet, Clarity—the drafter of the LSA—did not define the term "patients" by excluding Morris SNF's employees. The Court cannot read a definition into the LSA that excludes "employees" from "patients" now. *See Kotkin v. Aronson*, 815 A.2d 962, 963 (N.J. 2003) (noting that where the drafter did not define or qualify a clause, the court may not make a "better or more sensible contract than the one they made for themselves"); *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002) ("A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning."). Section 8(a)'s text clearly states that Clarity will not bill Morris SNF for molecular lab services, without differentiation between groups of individuals.

No other provision of the LSA overrides § 8(a)'s language or renders it ambiguous. Clarity argues that Exhibit A (1) clearly creates a right to bill Morris SNF for insured and uninsured employee testing, or (2) renders § 8(a) ambiguous. First, the plain language of Exhibit A does not support Clarity's theory. "Employee testing rate to the facility- $75" does not include a verb or any action creating a right that contradicts § 8(a). Nor does it clearly evidence through its plain language a right by Clarity to payment from Morris SNF.

6

Next, at first blush, the argument that Exhibit § 8(a) and Exhibit A read together create ambiguity has some traction. But Exhibit A does not contradict § 8(a) such that the LSA is susceptible to competing interpretations. Instead, Exhibit A is a sparse document consisting of two bullet points. The bullet points repeat that for COVID-19 testing, "[Clarity] will bill insurance for patients being tested" and notes the "[e]mployee testing rate to facility" is $75 or $299 respectively. (*Id.* at 7). Even so, the $75 or $299 "employee testing rate to facility" must be read in conjunction with its incorporation into the LSA. Section 8(a) directs the reader to Exhibit A only for "invoices" for "patients without insurance." Therefore, though Exhibit A may be ambiguous standing alone, read in conjunction with its incorporation into the LSA, it is only referenced as an invoice amount for patients without insurance. But it does not create a right to payment. Nothing in Exhibit A contradicts or renders ambiguous the clear statement in § 8(a) that "[Clarity] will not bill [Morris SNF] for molecular lab services." In sum, the Court does not read Exhibit A as injecting any ambiguity to § 8(a)'s broad and clear language.

Ultimately, a court's task is not to "torture the language of [a contract] to create ambiguity." *Velocity Invs. LLC Assignee of Webbank v. Gross*, 2024 WL 3466508, at *3 (N.J. Super. Ct. App. Div. July 19, 2024) (citing *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002)). Any ambiguity in the LSA should be strictly construed against Clarity, the drafter of the agreement. *Kotkin v. Aronson*, 815 A.2d 962, 963 (N.J. 2003); *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2308 (2024) (Kagan, J., dissenting). Moreover, as the Court found the contract unambiguous, it need not consider extrinsic evidence. *See CNH Industrial N.V. v. Reese*, 583 U.S. 133, 139 (2018) (per curiam) (noting that only when a contract is ambiguous may a court consider extrinsic evidence); *Save the Dinky, Inc. v. Trustees of Princeton Univ.*, 2015 WL 10097311, at *5 (N.J. Super. Ct. App. Div. Feb. 17, 2016) ("We need not examine the parties'

7

course of dealing, which arguably contradicts plaintiffs' position, because the terms in the [contract] are clear on their face and not subject to alternative meanings."). A straightforward reading of the LSA persuades the Court that Morris SNF is not in breach for non-payment to Clarity for their employees' COVID-19 testing costs.

## II. Quantum Merit

To recover under a theory of quantum meruit, plaintiffs must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Pollack v. Quick Quality Restaurants, Inc.*, 172 A.3d 568, 580 (N.J. Super. Ct. App. Div. 2017) (quoting *Starkey v. Estate of Nicolaysen*, 796 A.2d 238 (N.J. 2002)). That party must also establish a "reasonable expectation of payment" and that the services were performed "under circumstances that should have put the beneficiary on notice" that the party expected to be paid. *New Jersey Land Title Ass'n v. Rone*, 203 A.3d 178, 185 (App. Div. 2019), *aff'd*, 226 A.3d 54 (N.J. 2020) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285–86 (N.J. 1992)).

Even so, the existence of an express contract "excludes the awarding of relief regarding the same subject matter based on quantum meruit." *Kas Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387, 392 (N.J. Super. Ct. App. Div. 2007). Thus, a party cannot be granted a remedy based on quantum meruit that is inconsistent with the express terms of the contract. *Id.* at 393; *see also Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (noting a plaintiff may not "recover under unjust enrichment . . . when a valid, unrescinded contract governs the rights of the parties"); *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 76–77 (D.N.J. 2018) (same).

8

Here, there is no dispute that the LSA is a valid, enforceable agreement between the parties. Therefore, Clarity cannot claim quantum meruit when the LSA governed the relationship between the parties and explicitly covered the testing at issue.

## CONCLUSION

For the foregoing reasons, Morris SNF's motion for summary judgment [54] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: September 17, 2024